UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PAJARO VALLEY UNIFIED SCHOOL DISTRICT,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>J.S., et al.,<br><br>　　　　　Defendants. | Case No.: C 06-0380 PVT<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

On December 5, 2006, the parties appeared for hearing on cross-motions for summary judgment.[1]  Based on the briefs and arguments submitted,

IT IS HEREBY ORDERED that Pajaro Valley Unified School District's motion for summary judgment is DENIED and the motion by Defendants J.S. and A.O. for summary judgment is GRANTED for the reasons discussed herein.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

During the 2004-2005 school year, Student was a 14 year-old boy attending the seventh grade at Lakeview Middle School, which is in Pajaro Valley Unified School District ("Plaintiff" or the "District"). Defendant J.S. ("Student") resided with his mother, A.O. (collectively with Student, "Defendants"). On March 14, 2005, Student's attorney wrote the District and requested that the

---

[1]  The holding of this court is limited to the facts and the particular circumstances underlying the present motion.

ORDER, *page 1*

District assess Student's eligibility for special education and related services. At that time, Student was under suspension and had been recommended for expulsion.

On March 21, 2005, the District acknowledged Student's request, and notified Student's attorney that school psychologist Karrie West had made an appointment to meet with A.O. to explain the proposed assessment plan and to obtain A.O.'s written permission to do the assessment.

After obtaining A.O.'s written permission, the District proceeded to conduct an assessment[2] of Student, including: 1) interviewing A.O., Student's teachers, and a school counselor; 2) reviewing some of Student's records; 3) conducting psychological testing, including cognitive, perceptual and social/behavioral tests; 4) observing Student (although not in a classroom setting); 5) assessing Student's speech and language; 6) assessing Student's health and developmental milestones; and 7) assessing Student's academic level. The team that conducted the assessment consisted of a school psychologist, a special education teacher, a speech/language/hearing specialist, and a school nurse (collectively the "Assessment Team").

On May 16, 2005 the Assessment Team issued its Report of Assessment for Special Education (the "Assessment"). (Reynolds Decl., Exh. G.) The Assessment starts with a section entitled "Reason for Assessment" in which a box is checked for "Initial eligibility for special education" and the following statement is made: "Lakeview Middle School had referred [Student] for expulsion. During the expulsion proceedings Ms. [A.O.] referred [Student] for assessment due to concerns of inattentive symptoms impacting his academic achievement."

The Assessment summarizes Student's educational history and sets forth the results of the various interviews, tests, assessments, and observations that had been conducted. The Assessment was signed by each member of the Assessment Team. The signature page includes two sections above the signatures. The first is entitled "Recommendations" and includes various recommendations for accommodations Student could benefit from, such as being allowed to type his essays and being allowed extended time on tests. The second section on that page, immediately above the signatures, is entitled "Eligibility." That section includes an affirmative statement that Student "did not qualify for Special Educational Services under Other Health Impaired, Specific

---

[2] As used herein, the terms "assessment" and "evaluation" are used interchangeably.

Learning Disability, and Speech/Language Impairment. * * * No other disabling conditions were suspected."

The afternoon of May 16, 2005–*the same day that the Assessment was issued*–the District called A.O. in for a meeting. The District provided an interpreter to A.O. for the meeting because she speaks only Spanish. However, the District gave A.O. only an English language version of the Assessment. The parties dispute whether or not A.O. agreed to go forward without her attorney present. (It is undisputed, however, that the District did not even attempt to contact Student's attorney about the meeting.) The parties also dispute what exactly occurred at the meeting. Defendants claim that the District merely presented the Assessment and the eligibility determination to A.O. as a done deal. The District claims that it was a proper "IEP" meeting in which A.O. was provided with a full opportunity to participate in the determination of whether Student is eligible for special education and related services.

On June 1, 2005 Student's attorney wrote to the District and requested an independent educational assessment at public expense. The District responded by letter dated June 21, 2005, in which it: 1) explained why it believed the Assessment was appropriate; 2) notified Defendants that it was "prepared" to go to a due process hearing to defend the Assessment; and 3) instructed Defendants to inform the District by June 30, 2005 if they wished to "continue" to pursue an independent assessment, in which case the District would *then* file for due process.

On June 27, 2005 Student's attorney again wrote to the district requesting an independent educational assessment at public expense.

On August 22, 2005, almost three months after Student first requested an independent educational assessment at public expense, the District wrote to the California Office of Administrative Hearings and requested a due process hearing. The due process hearing was held less than a month later on September 15, 2005.

Based on the testimony and evidence introduced at the due process hearing, the Administrative Law Judge ("ALJ") issued a decision on October 21, 2005 in which he found that the District had not met its burden of showing that its Assessment of Student was conducted properly. Thus, the ALJ ruled that Student was entitled to an independent educational assessment at public

expense. The ALJ ordered the District to reimburse Student for the cost of the independent educational assessment upon receipt of written proof (presumably of the cost). The ALJ further ordered the District to comply with the requirements of California Education Code sections 56304 and 56329(a), and with Title 34 CFR section 300.534(a), including giving A.O. and Student's attorney notice and opportunity to participate in meetings concerning Student's assessment, educational placement, and eligibility for special education services. This appeal ensued.

## II.   LEGAL STANDARDS

A "parent has the right to an independent educational evaluation at public expense if the parent disagrees with an evaluation obtained by the public agency." *See* 34 C.F.R. § 300.502(b)(1). When a parent requests an independent educational evaluation, a school district must "without unnecessary delay" either comply or else file a due process complaint to request a hearing to show that its own evaluation is appropriate. *See* 34 C.F.R. § 300.502(b)(2).

Either party to a due process hearing under the Individuals with Disabilities Education Act ("IDEA") may appeal to the district court. These cases are normally decided on cross-motions for summary judgment. The standard of review on a motion for summary judgment in an IDEA case is unique. Courts base their decisions on a preponderance of the evidence (*see* 20 U.S.C. § 1415(i)(2)(C)(iii)), giving "due weight" to the hearing officer's findings. *See Amanda J. ex rel. Annette J. v. Clark County Sch. Dist.*, 267 F.3d 877, 887-88 (9th Cir. 2001). The standard is more stringent than the substantial evidence standard commonly applied in administrative appeals, but it does not rise to the level of a *de novo* review. *Ibid.*

## III.   DISCUSSION

### A.   STUDENT IS ENTITLED TO AN INDEPENDENT EDUCATIONAL EVALUATION AT PUBLIC EXPENSE BECAUSE THE DISTRICT FAILED TO TIMELY FILE A DUE PROCESS COMPLAINT

After receiving the request for an independent educational evaluation at public expense, the District waited three weeks and then imposed a demand that Student reiterate the request within 9 days or the District would interpret the silence as a withdrawal of the request. As Student and A.O. point out, when Student's attorney promptly reiterated the request for an independent educational evaluation at public expense, the District waited another eight weeks before finally filing a due

process complaint to request a hearing to show that its own evaluation was appropriate. The District has not explained why it took it almost three months from the time Student first requested an independent educational assessment at public expense for the District to file its due process complaint, much less why that delay was somehow "necessary." Thus, on the record before the court it appears that the District failed to file its due process complaint "without unnecessary delay."

The Supreme Court has emphasized the importance of IDEA's procedural safeguards:

"[T]he congressional emphasis upon full participation of concerned parties throughout the development of the IEP, as well as the requirements that state and local plans be submitted to the Secretary for approval, demonstrates the legislative conviction that adequate compliance with the procedures prescribed would in most cases assure much if not all of what Congress wished in the way of substantive content in an IEP." *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982).

The IDEA's procedural safeguards are considered so important that violations of those safeguards may warrant relief under the ACT. *See also, Park, ex rel. Park v. Anaheim Union High School Dist.*, 464 F.3d 1025, 1031 (9th Cir. 2006) ("relief is appropriate if procedural violations . . . seriously infringe [a student's] parents' opportunity to participate in the formulation of the individualized education plan")

Under the facts of the present case, the court finds that the District's unexplained and unnecessary delay in filing for a due process hearing waived its right to contest Student's request for an independent educational evaluation at public expense, and by itself warrants entry of judgment in favor of Student and A.O. in this action.

**B.   STUDENT IS ENTITLED TO AN INDEPENDENT EDUCATIONAL EVALUATION AT PUBLIC EXPENSE BECAUSE THE DISTRICT'S ASSESSMENT WAS NOT APPROPRIATE**

Even if the court did not find the District had waived its right to contest Student's request, summary judgment in favor of Defendants and against the district is warranted because, based on a preponderance of the evidence in the administrative record and before the court, and giving due weight to the ALJ"s findings, the court finds that the District's Assessment was *not* appropriate.

At the administrative hearing, Dr. Burdick testified that the Assessment was deficient because, among other things, it failed to adequately test Student's executive functioning, and failed to adequately explore the possibility that Student has pervasive developmental delay and/or

nonverbal learning disabilities. *See* AR[3] Vol. II at 189-92. Dr. Burdick is one of the three sources the District identified, in response to a request from Student's counsel, as being appropriate providers to conduct an independent assessment of Student. *See* AR Vol. I at 103. The court finds his testimony credible.

The District's witnesses, members of the Assessment Team, essentially testified that the disabilities Dr. Burdick testified should have been further explored would have shown up during the tests that they did administer. The court is not persuaded by the District's witnesses. The Assessment Team's conduct is highly suggestive that they did not approach the testing with an open mind. In writing the Assessment, instead of simply stating that Student's mother had requested an assessment, they included a gratuitous statement that the request was made "during expulsion proceedings." They concluded the Assessment with a finding of non-eligibility,[4] before discussing the test results with Student's mother. And they called the mother in for a meeting on the *very same day* they finished writing the Assessment, without notifying her attorney despite prior assurances they would do so, and without providing the mother with a copy of the Assessment in her own language. While the question of whether this conduct itself violated the IDEA is not before the court in this action, it is nonetheless evidence tending to show that the Assessment Team prejudged Student's eligibility for special education, and that their prejudgment may have led them to give the testing short shrift. While the court does not attribute to the Assessment Team any subjective bad faith, under all of the circumstances the court simply finds the testimony of Dr. Burdick, an independent expert the District itself had recommended, to be more credible and deserving of more weight.

### C. REMAND IS NOT APPROPRIATE

The District argues, without citation to any legal authority, that the court must remand the matter back to the ALJ for a new hearing. Remand is often appropriate in the context of statutes that

---

[3] "AR" refers to the Record of Administrative Hearing, volumes I and II, lodged herein on July 5, 2006. The clerk of the court shall now *file* both volumes in the official court file.

[4] The District argues that it is required to include a statement of eligibility in the assessment, citing California Education Code section 56327(a). However, that statute requires only that an assessment state whether the pupil "may need" special education, not whether the pupil is actually eligible for special education under the IDEA.

require a court to give deference to an ALJ's decision if it is supported by substantial evidence. *See, e.g., Bilby v. Schweiker*, 762 F.2d 715, 719 (9th Cir. 1985) (noting that, in the context of Supplemental Security Income benefits, remand is appropriate "where additional proceedings could remedy defects"). However, under the IDEA courts are directed to hear any new evidence offered by the parties, and to base their decisions on the preponderance of the evidence. *See* 20 U.S.C. § 1415(i)(2)(C)(iii). Given that the courts are authorized to take new evidence and may base their decisions on such new evidence, while a court must give an ALJ's findings "due weight," there is clearly no requirement to remand if the ALJ fails to make necessary findings. While remand may be appropriate in some situations under the IDEA, under the facts of this case and in light of the additional delay remand would entail the court does not find remand appropriate.

### IV. CONCLUSION

Student is entitled to an independent educational evaluation at public expense because: 1) the District failed to, without unnecessary delay, file a due process complaint; and 2) the District's Assessment was not appropriate. The District shall reimburse Defendants for the cost of the assessment already done by Dr. Burdick, and any further cost reasonably incurred for Dr. Burdick to prepare a written report of his assessment if he has not already done so.[5]

Dated: *12/15/06*

PATRICIA V. TRUMBULL
United States Magistrate Judge

---

[5] While not before the court and thus not part of this order, the court anticipates that the District will then comply with the provisions of the IDEA and related state laws when Student and his mother submit Dr. Burdick's report for consideration as part of a proper IEP meeting.